IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| POLYAI LTD,<br><br>Plaintiff,<br><br>v.<br><br>CLOUD WHALE INTERACTIVE TECHNOLOGY LLC,<br><br>Defendant. | Civ. Action No. ________________<br><br>COMPLAINT<br>DEMAND FOR JURY TRIAL |

Plaintiff POLYAI LTD ("PolyAI"), by and through the undersigned counsel, alleges the claims set forth in this Complaint against Defendant CLOUD WHALE INTERACTIVE TECHNOLOGY LLC ("Cloud Whale").

NATURE OF THE ACTION

1. This is an action for injunctive and monetary relief arising from Cloud Whale's willful infringement of PolyAI's POLYAI® mark and related marks. PolyAI also alleges claims of false designation of origin and unfair competition, breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of the Florida Deceptive and Unfair Trade Practices Act.

JURISDICTION AND PROPER VENUE

2. This action arises under the Trademark Act of 1946, the Lanham Act, (15 U.S.C. §§ 1051 et seq.), and particularly under Sections 32, 34, 35 and 43(a) of the Act (15 U.S.C. §§ 1114, 1116, 1117 and 1125(a), as more fully appears in this

Complaint. This United States District Court for the Middle District of Florida has jurisdiction under Section 39 of the Lanham Act (15 U.S.C. § 1121) (actions arising under the Federal Trademark Act), 28 U.S.C. § 1338(a) (acts of Congress relating to trademarks), and 28 U.S.C. § 1338(b) (pendent unfair competition claims).

3. This Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, because, as alleged in more detail below, there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. This Court has supplemental jurisdiction over all state law and common law claims in the civil action pursuant to 28 U.S.C. § 1367 because the state or common law claims are so related to claims over which this court has original jurisdiction that the state law and common law claims form part of the same case or controversy under Article III of the United States Constitution.

5. This Court has personal jurisdiction over Cloud Whale because, among other things, Cloud Whale has purposefully availed itself of the benefits and protections of Florida law by committing, and continuing to commit, acts of trademark infringement in this District. The Court also has personal jurisdiction over Cloud Whale because Cloud Whale contractually agreed to the personal jurisdiction of the Court in the agreement PolyAI alleges was materially breached.

6. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400 because a substantial part of the events giving rise to the claim occurred in this District. Venue is also proper in this District because Cloud Whale contractually

agreed to venue in this District in the agreement PolyAI alleges was materially breached.

7. By this action, PolyAI seeks damages and preliminary injunctive relief pursuant to Sections 32, 34, 35, 36, and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114, 1116, 1117, 1118 and 1125(a), applicable Florida State Law, as well as Common Law.

PARTIES

8. PolyAI is a United Kingdom limited company with its principal place of business at 5th Floor, 12 Moorgate, London UNITED KINGDOM EC2R6DA.

9. PolyAI is a citizen of the United Kingdom for the purpose of diversity jurisdiction pursuant to 28 U.S.C. § 1332(c)(1).

10. On information and belief, Cloud Whale is a Delaware Limited Liability Company with an address of 300 Delaware Avenue, Suite 210-2207, Wilmington, Delaware 19081.

11. Cloud Whale is a citizen of the State of Delaware for the purpose of diversity jurisdiction pursuant to 28 U.S.C. § 1332(c)(1).

12. On information and belief, none of the members of Cloud Whale's Limited Liability Company are citizens of the United Kingdom.

13. Complete diversity of citizenship exists between PolyAI and Cloud Whale.

14. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

## FACTUAL BACKGROUND

### PolyAI and Its Valuable and Enforceable Trademark Rights

15. PolyAI is an award-winning provider of conversational AI systems throughout the world.

16. Founded in 2017 with a mission to provide the latest conversational AI research and products, PolyAI now has over hundreds of employees in offices across Europe, North America, and Asia.

17. Today, PolyAI's conversational assistants are being used by consumers of some of the world's most recognizable brands.

18. PolyAI is using and has used its POLYAI® mark in the United States on and in connection with conversational AI research and products.

19. PolyAI owns common law rights in and to the POLYAI mark in the United States for and in connection with such conversational AI research and products.

20. PolyAI also owns numerous valuable and enforceable rights in and to the POLYAI trademark worldwide. Such rights include, but are not limited to, ownership of U.S. Trademark Registration No. 6644010 for the mark POLYAI® for, among other services, "Software as a Service (SaaS) and Platform as a Service (PaaS) featuring software for providing interactive voice response (IVR) systems," "Software as a Service (SaaS) and Platform as a Service (PaaS) featuring software for providing a speech enabled virtual agent," "Software as a Service (SaaS) and Platform as a Service (PaaS) featuring a voice artificial intelligence platform that

listens to questions and provides spoken answers," and "Software as a Service (SaaS) and Platform as a Service (PaaS) featuring software for the deployment of conversational Artificial Intelligence (AI) technology" (the "'010 Registration").

21. The application that matured into the '010 Registration was filed on March 17, 2021 and the registration issued on February 15, 2022.

22. The '010 Registration is valid, subsisting, and unrevoked, and is *prima facie* evidence of PolyAI's exclusive right to use the POLYAI® mark in commerce in connection with the services specified in the registration.

23. PolyAI also owns a number of other U.S. applications and registrations for marks that include the term POLYAI.

24. Such marks include U.S. Trademark Registration No. 7506303 for the following mark for services in Class 42:

PolyAI

25. Such marks also include U.S. Trademark Registration No. 7436551 for POLYAI - ZERO TOUCH RESOLUTION for services in Class 42.

26. PolyAI has been the subject of numerous articles in publications worldwide.

27. PolyAI also advertises and markets its goods/services across various social media platforms, including Facebook, X (formerly known as Twitter), YouTube and LinkedIn.

28. PolyAI owns and operates a website at the URL www.poly.ai.

29. As a result of PolyAI's marketing, advertising and promotion of its POLYAI® mark and related marks, and as a result of its widespread use and the consuming public's acceptance of it and them, PolyAI's services have come to be, and now are, well and favorably known to the public under the POLYAI® mark and related marks.

30. PolyAI has invested significant time, effort, money and resources to advertise and promote its POLYAI® mark and related marks.

31. As a result of the significant time, money and resources invested in, and that continues to be invested in the marketing, advertising and promotion of, PolyAI's services under and in connection with the POLYAI® mark and related marks, PolyAI has experienced significant revenues and investment in connection with its POLYAI® mark and related marks. This, in turn, has caused the POLYAI® mark to become a distinctive symbol of source, which stands for the quality and reputation of PolyAI and its services. Accordingly, the POLYAI® mark has built up a substantial commercial reputation and incalculable associated goodwill giving it an added brand value that belongs exclusively to PolyAI.

32. PolyAI considers its POLYAI® mark and related marks to be among its most valuable assets.

<u>Cloud Whale and Its Infringing Conduct</u>

33. Cloud Whale offers for sale, promotes, and/or markets conversational AI goods/services.

34. Cloud Whale uses and has used the virtually identical POLY.AI mark and marks similar thereto for and in connection with its goods/services.

35. Cloud Whale owned and operated a website at the URL www.polyai.ai.

36. Cloud Whale still owns the domain name www.polyai.ai.

37. Cloud Whale offered a conversational AI app under and in connection with the mark POLY.AI on the Apple App Store at and on the Google Play Store.

38. Cloud Whale's conversational app has included and continues to include content that is sexual in nature.

39. Cloud Whale's conversational AI app was and is frequently and interchangeably referred to by consumers as both POLY.AI and POLY AI (without a dot).

40. On November 13, 2023, PolyAI submitted a complaint to the Apple App Store concerning Cloud Whale's conversational AI app. Despite Cloud Whale's express notice of PolyAI's superior rights to the POLYAI® mark, Cloud Whale refused to cease using its POLY.AI mark on the App Store and elsewhere.

41. On January 3, 2024, Cloud Whale filed U.S. Trademark Application Serial No. 98339617 for the virtually identical POLY.AI mark for, among other goods, "Downloadable computer chatbot software for simulating conversations," "Downloadable computer software using artificial intelligence for software development, machine learning, facial and speech recognition," "Personal digital assistants," and "Recorded computer software using artificial intelligence for

software development, machine learning, facial and speech recognition" (the "'617 Application").

42. That same day, January 3, 2024, Cloud Whale also filed U.S. Trademark Application Serial No. 98339579 for the mark POLYS.AI for, among other goods, "Downloadable computer chatbot software for simulating conversations," "Downloadable computer software using artificial intelligence for software development, machine learning, facial and speech recognition," "Personal digital assistants," and "Recorded computer software using artificial intelligence for software development, machine learning, facial and speech recognition" (the "'579 Application").

43. Cloud Whale was expressly aware of PolyAI's rights to the POLYAI® mark for the services in the '010 Registration at the time Cloud Whale knowingly and intentionally filed the '617 Application and the '579 Application.

44. The POLYAI® mark in the '010 Registration, on the one hand, is confusingly similar to the POLY.AI mark in the '617 Application and the POLYS.AI mark in the '579 Application, on the other hand.

45. The services in the '010 Registration are confusingly similar to the goods in the '617 Application and the goods in the '579 Application.

46. The services with which PolyAI has used its POLYAI® mark are confusingly similar to the goods in the '617 Application and the goods in the '579 Application.

47. Cloud Whale knew that its POLY.AI and POLYS.AI marks for the goods in the ‘617 Application and the ‘579 Application, respectively, were likely to confuse consumers into believing that Cloud Whale and/or its goods were somehow sponsored by, related to, or affiliated with PolyAI and its services. Therefore, on January 16, 2024, Cloud Whale expressly abandoned the ‘617 Application and the ‘579 Application.

48. On January 10, 2024, Applicant filed U.S. Trademark Application Serial No. 98350207 for the mark POLY.AI (Stylized) for, among other goods, “Downloadable computer chatbot software for simulating conversations,” “Downloadable computer software using artificial intelligence for software development, machine learning, facial and speech recognition,” “Personal digital assistants,” and “Recorded computer software using artificial intelligence for software development, machine learning, facial and speech recognition” (the “‘207 Application”).

49. The literal element of the ‘207 Application is the term POLY.AI.

50. Cloud Whale voluntarily described the mark in the ‘207 Application as follows: “The mark consists of the stylized term POLY.AI.”

51. On January 10, 2024, Applicant filed U.S. Trademark Application Serial No. 98350196 for the mark POLYS.AI (Stylized) for, among other goods, “Downloadable computer chatbot software for simulating conversations,” “Downloadable computer software using artificial intelligence for software development, machine learning, facial and speech recognition,” “Personal digital

assistants," and "Recorded computer software using artificial intelligence for software development, machine learning, facial and speech recognition" (the "'196 Application").

52. The literal element of the '196 Application is the term POLYS.AI.

53. Cloud Whale voluntarily described the mark in the '196 Application as follows: "The mark consists of the stylized term POLYS.AI."

54. On May 8, 2024, PolyAI sent Cloud Whale a cease and desist letter in which PolyAI once again reminded Cloud Whale of PolyAI's superior rights to the POLYAI® mark and demanded that Cloud Whale cease using the POLY.AI mark and/or any trade name or mark confusingly similar thereto (including POLYS.AI).

55. Cloud Whale refused to comply with PolyAI's May 8, 2024 letter.

PolyAI's Previous Lawsuit Against Cloud Whale
and the Resulting Settlement Agreement

56. On July 12, 2024, PolyAI filed a lawsuit against Cloud Whale in the United States District Court for the Middle District of Florida. This lawsuit was captioned *POLYAI LTD. v. CLOUD WHALE INTERACTIVE TECHNOLOGY LLC* with civil action number 3:24-cv-00693 (the "Civil Action").

57. PolyAI alleged in the Civil Action that Cloud Whale had engaged in trademark infringement, trademark counterfeiting, false designation of origin and unfair competition, and violations of related state law claims based primarily on Cloud Whale's unauthorized use of a mark that was confusingly similar to PolyAI's POLYAI® mark.

58. After PolyAI filed the Civil Action, the parties engaged in settlement discussions in an attempt to resolve the dispute.

59. On or around November 22, 2024, the parties entered into a Settlement Agreement (the "Agreement") to resolve the Civil Action and the parties' dispute.

60. The Agreement included a number of material obligations on the part of Cloud Whale, not the least of which was an obligation to cease using the term "Poly.AI", and any term(s) similar thereto, in any manner and in any media, by a certain deadline.

61. Cloud Whale also agreed to cease using the URL www.polyai.ai for any purpose by a certain deadline.

62. PolyAI performed all of its material obligations under the Agreement, including the dismissal of the Civil Action without prejudice on or around November 26, 2024.

63. In contrast, Cloud Whale materially breached the Agreement on numerous occasions.

## Cloud Whale Repeatedly Materially Breached the Settlement Agreement

64. The first time Cloud Whale materially breached the Agreement was in or around March 2025.

65. On March 31, 2025, PolyAI notified Cloud Whale that it was materially breaching the Agreement by continuing to use the URL www.polyai.ai in a manner that was not authorized under the Agreement.

66. In response, Cloud Whale acknowledged the breach but promised to correct it.

67. As part of the parties' discussion on this issue, PolyAI also asked Cloud Whale to conduct an internal audit to ensure that there were no additional material breaches.

68. PolyAI also informed Cloud Whale that, as of April 2025, PolyAI was concerned that it was still finding instances in which searches for "PolyAI" and related terms were directing consumers to Cloud Whale instead of PolyAI.

69. PolyAI also cautioned Cloud Whale that any continued residual uses of the term "Poly AI" and related terms after April 15, 2025 would be problematic.

70. The second time Cloud Whale materially breached the Agreement was six months later in or around September 2025.

71. On September 30, 2025, PolyAI notified Cloud Whale that it was materially breaching the Agreement again, this time by continuing to use the term "Poly.AI" in a manner that was not authorized under the Agreement.

72. More specifically, PolyAI identified 13 different webpages owned and operated by Cloud Whale, and over which Cloud Whale had control and could remove such uses, on which there were unauthorized uses of the term "Poly.AI".

73. Once again, Cloud Whale responded by acknowledging the breach and agreed to review and correct it.

74. The third time Cloud Whale materially breached the Agreement was in or around April 2026.

75. On April 22, 2026, PolyAI notified Cloud Whale that it was materially breaching the Agreement by once again continuing to use the term "Poly.AI" in a manner that was not authorized under the Agreement.

76. This time Cloud Whale was materially breaching the Agreement by using the term "Poly.AI" across Meta platforms with sponsored advertisements that started running as recently as April 10, 2026.

77. Importantly, because Cloud Whale continued to materially breach the Agreement more than a year after the Agreement had been executed, PolyAI once again asked Cloud Wale to conduct an audit of all of its existing platforms to confirm that there were no other unauthorized uses elsewhere.

78. Despite PolyAI's request, PolyAI was shocked to discover that Cloud Whale materially breached the Agreement yet again in or around August 2026.

79. On August 4, 2026, PolyAI notified Cloud Whale that it was yet again materially breaching the Agreement.

80. This time Cloud Whale materially breached the Agreement by continuing to use the term "Poly.AI" as meta keywords so as to skew consumer search results in Cloud Whale's favor. This included on Cloud Whale's home page at the URL www.polybuzz.ai. Such uses were prohibited under the Agreement.

81. Cloud Whale also materially breached the Agreement by indexing Search Engine Optimization webpages built around the term “Poly.AI”. These pages were clearly actively built to capture traffic from people searching for PolyAI. Therefore, this, too, had the effect of skewing consumer search results in Cloud Whale’s favor. Such uses were prohibited under the Agreement.

82. In addition, Cloud Whale materially breached the Agreement by continuing to use “Poly.AI” branding on user-facing content, including characters described as “Poly.AI, your friend and companion!” and “Poly.ai’s AI, the heart of the app.” Such uses were prohibited under the Agreement.

83. Because of the nature and sheer volume of unauthorized uses of the term “Poly AI” and similar terms by Cloud Whale, consumers were routinely directed away from PolyAI and towards Cloud Whale. This, in turn, led to a diversion of customers as well as a loss of sales and profits for PolyAI.

84. Notably, this was the same concern PolyAI had already shared with Cloud Whale back in April 2025.

85. Because this was Cloud Whale’s fourth material breach, PolyAI notified Cloud Whale that PolyAI considered Cloud Whale’s pattern of materially breaching the agreement to be its own uncurable material breach (among other causes of action).

86. Moreover, considering that Cloud Whale had purportedly conducted audits first in or around April 2025 and then again in April 2026 and yet still

continued to materially breach the Agreement, it became clear to PolyAI that Cloud Whale was materially breaching the Agreement intentionally.

87. PolyAI informed Cloud Whale that any future breaches could result in litigation in which PolyAI sought injunctive relief and the recovery of attorney fees pursuant to the terms of the Agreement.

88. Cloud Whale responded to PolyAI in a letter dated August 10, 2026. In that letter, Cloud Whale attempted to justify its unauthorized use of the term "Poly AI" as meta keywords even though the Agreement required Cloud Whale to cease use of the term Poly.AI, and any term(s) confusingly similar thereto, in any manner and in any media. Nonetheless, Cloud Whale agreed to remove all use of the term "Poly AI" as meta keywords.

89. As to PolyAI's other concerns, Cloud Whale agreed to remove the uses identified by PolyAI and implement new platform-wide filters that would prevent such uses from occurring again in the future.

90. Despite Cloud Whale's promises, PolyAI was once again shocked to discover that Cloud Whale was still materially breaching the Agreement over one month later in late September 2026.

91. To make matters worse, Cloud Whale was still materially breaching the Agreement by performing the same acts PolyAI had notified Cloud Whale about on August 4, 2026 and that Cloud Whale had promised to address.

92. By way of example, even though Cloud Whale had expressly informed PolyAI on August 10, 2026 that it would be removing the meta keyword content

PolyAI previously identified and would not use "Poly AI" in metadata going forward, such uses still appeared as late as September 29, 2026.

93. Similarly, even though Cloud Whale had also agreed to address PolyAI's concerns about Cloud Whale's unauthorized use of the term "Poly AI" to serve programmatic search-landing pages, such uses also remained. Indeed, of 99 URLs investigated by PolyAI after Cloud Whale's August 10, 2026 letter, 40 still included a "Poly AI" term in their meta tags (12 in the title/meta description specifically). In most cases, Cloud Whale used the term "polyai" between 27 and 31 times per page, thereby confirming that its conduct was intentional.

94. Moreover, even though Cloud Whale agreed to address PolyAI's concerns about the unauthorized use of the term "Poly AI" in user-facing content—including by implementing a platform-wide filter so as to prevent such uses from occurring in the future—PolyAI identified another four such uses that remained as of September 29, 2026 with the term "Poly AI" in every meta tag. As to those uses Cloud Whale did remove, Cloud Whale continued to index them under "Poly AI" titles as "soft 404s (HTTP 200)". This, in turn, allowed Cloud Whale to retain "Poly AI"-titled URLs in its index and thereby continue to drive consumer traffic to Cloud Whale and away from PolyAI.

95. Since the Agreement was executed or around November 22, 2024, Cloud Whale has materially breached the Agreement no fewer than four times.

96. On information and belief, Cloud Whale will not cease materially breaching the Agreement unless ordered to do so.

97. On information and belief, Cloud Whale will not cure any subsequent material breaches. This is evidenced by its failure to cure its August 2026 material breach and/or to follow through with the promises it expressly made to PolyAI in Cloud Whale's letter dated August 10, 2026.

98. Cloud Whale's unauthorized use of the term "Poly.AI", and term(s) similar thereto, for and in connection with Cloud Whale's conversational AI app and related goods/services is likely to cause confusion, mistake and deception among consumers, the public, and the trade as to whether Cloud Whale's goods or services are affiliated with, sponsored by or endorsed by PolyAI. This includes Cloud Whale's unauthorized use of the term "Poly AI" and similar terms in metatags and for and in connection with Cloud Whale's online advertising and search engine strategy.

99. Cloud Whale is not affiliated with or sponsored by PolyAI.

100. At no time did PolyAI ever give Cloud Whale license, permission or authority to use or display a mark consisting of or including PolyAI's POLYAI® mark or related marks, or any term(s) or mark(s) similar thereto, on or in connection with any advertising, promotion, offer for sale, or sale of any goods or services of Cloud Whale.

101. Cloud Whale's actions as alleged herein have created a likelihood of injury to PolyAI's business reputation and have caused a strong likelihood of consumer confusion, mistake, and deception as to the source of, origin or relationship of PolyAI's and Cloud Whale's goods and services.

102. Cloud Whale otherwise competed unfairly with PolyAI by unlawfully trading on and using a mark and term that is identical and/or confusingly similar to PolyAI's POLYAI® mark without PolyAI's permission or consent.

103. Cloud Whale has been on express notice of PolyAI's POLYAI® mark since at least as early as November 13, 2023.

104. Despite such express notice, Cloud Whale decided to use, and has continued to use, a mark and term that is identical and/or confusingly similar to PolyAI's POLYAI® mark.

105. Cloud Whale's continued infringement of PolyAI's POLYAI® mark despite actual notice of PolyAI's superior intellectual property rights is willful, deliberate and intentional.

106. Cloud Whale has been expressly aware of its obligations under the Agreement since at least as early as November 22, 2024.

107. Despite such express notice, Cloud Whale has repeatedly materially breached the Agreement.

108. Cloud Whale's repeated material breaches of the Agreement have been willful, deliberate and intentional.

109. Cloud Whale's acts lead to the substantial and irreparable injury to the public and to PolyAI's business reputation and goodwill.

110. As a result of Cloud Whale's unlawful acts, PolyAI has suffered irreparable damage, including diversion of customers, loss of sales and loss of profits.

111. As a direct and proximate result of Cloud Whale's unlawful acts, PolyAI has seen the conversion rate as part of its paid brand-term search campaign decrease by over 80%.

112. As a direct and proximate result of Cloud Whale's unlawful acts, PolyAI has seen its costs per click as part of its paid brand-term search campaign more than double. This amount continues to rise.

113. As a direct and proximate result of Cloud Whale's unlawful acts, PolyAI has seen its costs per conversion as part of its paid brand-term search campaign increase ten times.

**COUNT I**
**TRADEMARK INFRINGEMENT**
**(15 U.S.C. § 1114)**

114. PolyAI hereby readopts and re-alleges the allegations set for in Paragraphs 1 – 113 above.

115. This is an action for trademark infringement against Cloud Whale.

116. PolyAI is the owner of the POLYAI® mark and the '010 Registration for the POLYAI® mark.

117. PolyAI is the lawful exclusive owner of the '010 Registration.

118. The '010 Registration is valid, subsisting, and unrevoked, and is prima facie evidence of PolyAI's exclusive right to use the mark in that registration in commerce in connection with the services specified in the registration.

119. Cloud Whale, intentionally and without authorization from PolyAI, has used and is continuing to use a mark that is virtually identical to, or substantially indistinguishable from, PolyAI's POLYAI® mark.

120. Cloud Whale's use of the POLY.AI mark in connection with Cloud Whale's conversational AI app and related goods/services is likely to cause confusion, mistake and deception among consumers, the public, and the trade as to whether Cloud Whale's goods or services are affiliated with, sponsored by or endorsed by PolyAI.

121. Cloud Whale's actions, as set forth, constitute infringement of PolyAI's POLYAI® mark in the '010 Registration in violation of the Lanham Act, 15 U.S.C. § 1114(1).

122. Cloud Whale has acted with actual or constructive knowledge of PolyAI's POLYAI® mark and the '010 Registration, and upon information and belief, with deliberate intention to confuse consumers, or willful blindness to PolyAI's rights.

123. Cloud Whale has been on express notice of PolyAI's rights in the POLYAI® mark since at least as early as November 2023. Despite such express notice, Cloud Whale has continued to use a mark that is virtually identical and/or confusingly similar to PolyAI's POLYAI® mark.

124. Cloud Whale's acts, as alleged, constitute trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114, all to the substantial and irreparable injury to the public and to PolyAI's business reputation and goodwill.

125. Cloud Whale's use without leave or license of a colorable imitation of PolyAI's POLYAI® mark constitutes trademark infringement, pursuant to Section 32 of the Lanham Act, 15 U.S.C § 1114.

126. As a direct and proximate result of Cloud Whale's wrongful acts, PolyAI has suffered and continues to suffer and/or is likely to suffer damage to PolyAI's business reputation and goodwill. Cloud Whale will continue, unless restrained, to use a mark that is virtually identical to PolyAI's POLYAI® mark and will cause irreparable damage to PolyAI, including diversion of customers, loss of sales and loss of profits. PolyAI has no adequate remedy at law. PolyAI is entitled to an injunction restraining Cloud Whale, its officers, agents, and employees, and all persons acting on behalf of and/or in concert with Cloud Whale, from engaging in further acts of trademark infringement. Such harm will continue and increase until Cloud Whale is preliminarily and permanently enjoined from its unlawful conduct.

127. Cloud Whale has made and will continue to make substantial profits and/or gains to which it is not entitled.

128. By reason of the foregoing, PolyAI has been and will continue to be irreparably harmed and damaged. PolyAI's remedies at law are inadequate to compensate for this harm and damage.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION**
**(15 U.S.C. § 1125(a)**

129. PolyAI hereby readopts and re-alleges the allegations set forth in Paragraphs 1 – 113 above.

130. PolyAI is the owner of the POLYAI® mark and related marks and the ‘010 Registration for the POLYAI® mark.

131. PolyAI is the lawful exclusive owner of the ‘010 Registration.

132. The ‘010 Registration is valid, subsisting, and unrevoked, and is prima facie evidence of PolyAI’s exclusive right to use the mark in that registration in commerce in connection with the services specified in the registration.

133. Cloud Whale has used and continues to use in connection with the advertising and sale of goods in commerce, without PolyAI’s consent, a mark that so resembles PolyAI’s POLYAI® mark and related marks that it falsely designates the origin of Cloud Whale’s goods and services and confuses the public by suggesting that those goods and services are sponsored by or affiliated with PolyAI, in violation of 15 U.S.C. § 1125(a).

134. Cloud Whale’s acts have a substantial economic effect on interstate commerce because goods and services under or in connection with the POLY.AI mark are and have been advertised and sold in interstate commerce, and because PolyAI’s goods and services under or in connection with the POLYAI® mark and related marks also are and have been advertised and sold in interstate commerce.

135. Cloud Whale's actions as alleged herein constitute a false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

136. As a direct and proximate result of Cloud Whale's wrongful acts, PolyAI has suffered and continues to suffer and/or is likely to suffer damage to its business reputation and goodwill. Cloud Whale will continue, unless restrained, to use a mark that is confusingly similar to PolyAI's POLYAI® mark and related marks and will cause irreparable damage to PolyAI. PolyAI has no adequate remedy at law. PolyAI is entitled to an injunction restraining Cloud Whale, its officers, agents, and employees, and all persons acting in concert with Cloud Whale, from engaging in further wrongful acts. Such harm will continue and increase until Cloud Whale is preliminarily and permanently enjoined from its unlawful conduct.

137. PolyAI is further entitled to recover from Cloud Whale the actual damages and/or loss of revenue and potential revenue that PolyAI has sustained and/or is likely to sustain as a result of Cloud Whale's wrongful acts. PolyAI is presently unable to ascertain the full extent of the monetary damages that it has suffered and/or is likely to suffer by reason of Cloud Whale's wrongful acts.

138. PolyAI is further entitled to recover from Cloud Whale the gains, profits, and advantages Cloud Whale has obtained as a result of its wrongful acts. PolyAI is presently unable to ascertain the full extent of the gains, profits, and advantages that Cloud Whale has realized by reason of its wrongful acts.

139. Cloud Whale has been on express notice of PolyAI's rights in the POLYAI® mark and related marks since at least as early as November 2023. Despite such express notice, Cloud Whale has continued to use a mark that is virtually identical and/or confusingly similar to PolyAI's POLYAI® mark and related marks.

140. On information and belief, Cloud Whale's actions as alleged herein were willful, malicious and/or intentional. As a result, PolyAI is entitled to an award of enhanced damages under 15 U.S.C. § 1117.

## COUNT III
## FLORIDA COMMON LAW TRADEMARK INFRINGEMENT

141. PolyAI hereby readopts and re-alleges the allegations set forth in Paragraphs 1 – 113 above.

142. PolyAI is the owner of the POLYAI® mark and related marks and the '010 Registration for the POLYAI® mark.

143. PolyAI is the lawful exclusive owner of the '010 Registration.

144. The '010 Registration is valid, subsisting, and unrevoked, and is prima facie evidence of PolyAI's exclusive right to use the mark in that registration in commerce in connection with the services specified in the registration.

145. Cloud Whale, intentionally and without authorization from PolyAI, has used and is continuing to use a mark that is virtual identical to, or substantially indistinguishable from, PolyAI's POLYAI® mark and related marks.

146. Cloud Whale's use of the POLY.AI mark in connection with Cloud Whale's conversational AI app and related goods/services is likely to cause confusion, mistake and deception among consumers, the public, and the trade as to whether Cloud Whale's goods or services are affiliated with, sponsored by or endorsed by PolyAI.

147. Cloud Whale's actions, as set forth, constitute infringement of PolyAI's POLYAI® mark and related marks in violation of Florida common law.

148. As a direct and proximate result of Cloud Whale's wrongful acts, PolyAI has suffered and continues to suffer and/or is likely to suffer damage to its business reputation and goodwill. Cloud Whale will continue, unless restrained, to use a mark that is confusingly similar to PolyAI's POLYAI® mark and related marks and will cause irreparable damage to PolyAI. PolyAI has no adequate remedy at law. PolyAI is entitled to an injunction restraining Cloud Whale, its officers, agents, and employees, and all persons acting in concert with Cloud Whale, from engaging in further wrongful acts. Such harm will continue and increase until Cloud Whale is preliminarily and permanently enjoined from its unlawful conduct.

149. PolyAI is further entitled to recover from Cloud Whale the actual damages and/or loss of revenue and potential revenue that PolyAI has sustained and/or is likely to sustain as a result of Cloud Whale's wrongful acts. PolyAI is presently unable to ascertain the full extent of the monetary damages that it has suffered and/or is likely to suffer by reason of Cloud Whale's wrongful acts.

150. PolyAI is further entitled to recover from Cloud Whale the gains, profits, and advantages Cloud Whale has obtained as a result of its wrongful acts. PolyAI is presently unable to ascertain the full extent of the gains, profits, and advantages that Cloud Whale has realized by reason of its wrongful acts.

## COUNT IV
## FLORIDA COMMON LAW UNFAIR COMPETITION

151. PolyAI hereby readopts and re-alleges the allegations set forth in Paragraphs 1 – 113 above.

152. PolyAI is the owner of the POLYAI® mark and related marks and the ‘010 Registration for the POLYAI® mark.

153. PolyAI is the lawful exclusive owner of the ‘010 Registration.

154. The ‘010 Registration is valid, subsisting, and unrevoked, and is prima facie evidence of PolyAI’s exclusive right to use the mark in that registration in commerce in connection with the services specified in the registration.

155. Cloud Whale, intentionally and without authorization from PolyAI, has used and is continuing to use a mark that is virtual identical to, or substantially indistinguishable from, PolyAI’s POLYAI® mark and related marks.

156. Cloud Whale’s use of the POLY.AI mark in connection with Cloud Whale’s conversational AI app and related goods/services is likely to cause confusion, mistake and deception among consumers, the public, and the trade as to whether Cloud Whale’s goods or services are affiliated with, sponsored by or endorsed by PolyAI.

157. Cloud Whale's actions, as set forth, constitute unfair competition in violation of Florida common law.

158. As a direct and proximate result of Cloud Whale's wrongful acts, PolyAI has suffered and continues to suffer and/or is likely to suffer damage to its business reputation and goodwill. Cloud Whale will continue, unless restrained, to use a mark that is confusingly similar to PolyAI's POLYAI® mark and related marks and will cause irreparable damage to PolyAI. PolyAI has no adequate remedy at law. PolyAI is entitled to an injunction restraining Cloud Whale, its officers, agents, and employees, and all persons acting in concert with Cloud Whale, from engaging in further wrongful acts. Such harm will continue and increase until Cloud Whale is preliminarily and permanently enjoined from its unlawful conduct.

159. PolyAI is further entitled to recover from Cloud Whale the actual damages and/or loss of revenue and potential revenue that PolyAI has sustained and/or is likely to sustain as a result of Cloud Whale's wrongful acts. PolyAI is presently unable to ascertain the full extent of the monetary damages that it has suffered and/or is likely to suffer by reason of Cloud Whale's wrongful acts.

160. PolyAI is further entitled to recover from Cloud Whale the gains, profits, and advantages Cloud Whale has obtained as a result of its wrongful acts. PolyAI is presently unable to ascertain the full extent of the gains, profits, and advantages that Cloud Whale has realized by reason of its wrongful acts.

**COUNT V**
**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**

161. PolyAI hereby readopts and re-alleges the allegations set forth in Paragraphs 1 – 113 above.

162. This is an action for violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statute § 501.201 et. seq.

163. PolyAI is the owner of the POLYAI® mark and related marks and the '010 Registration for the POLYAI® mark.

164. PolyAI is the lawful exclusive owner of the '010 Registration.

165. The '010 Registration is valid, subsisting, and unrevoked, and is prima facie evidence of PolyAI's exclusive right to use the mark in that registration in commerce in connection with the services specified in the registration.

166. Cloud Whale, intentionally and without authorization from PolyAI, has used and is continuing to use a mark that is virtual identical to, or substantially indistinguishable from, PolyAI's POLYAI® mark and related marks.

167. Cloud Whale's use of the POLY.AI mark in connection with Cloud Whale's conversational AI app and related goods/services is likely to cause confusion, mistake and deception among consumers, the public, and the trade as to whether Cloud Whale's goods or services are affiliated with, sponsored by or endorsed by PolyAI.

168. Cloud Whale has acted with actual or constructive knowledge of PolyAI's POLYAI® mark and related marks and the '010 Registration, and upon

information and belief, with deliberate intention to confuse consumers, or willful blindness to PolyAI's rights.

169. Cloud Whale has engaged in unfair and deceptive acts or practices by using a designation that is virtually identical to PolyAI's POLYAI ®mark and related marks to promote, advertise, offer for sale, sell and/or distribute goods in the state of Florida, thereby creating a likelihood of public confusion as to the source of the parties' respective goods/services. This has caused financial loss to PolyAI.

170. Cloud Whale's actions have been willful, deliberate, and intended to benefit Cloud Whale at PolyAI's expense.

171. Cloud Whale's actions constitute deceptive trade practices in violation of Section 501.204 of the Florida Statutes.

172. As a direct and proximate result of Cloud Whale's wrongful acts, PolyAI has suffered and continues to suffer and/or is likely to suffer damage to PolyAI's business reputation and goodwill. Cloud Whale will continue, unless restrained, to use a mark that is virtually identical to PolyAI's POLYAI® mark and related marks and will cause irreparable damage to PolyAI, including diversion of customers, loss of sales and loss of profits. PolyAI has no adequate remedy at law. PolyAI is entitled to an injunction restraining Cloud Whale, its officers, agents, and employees, and all persons acting on behalf of and/or in concert with Cloud Whale, from engaging in further acts of trademark infringement. Such harm will continue

and increase until Cloud Whale is preliminarily and permanently enjoined from its unlawful conduct.

173. As a result of Cloud Whale's actions, PolyAI was forced to retain counsel and Cloud Whale is obligated to pay reasonable attorneys' fees and costs in connection with the prosecution of this matter.

174. Cloud Whale is realizing profit and will continue to realize a profit from its unlawful actions.

175. PolyAI is further entitled to recover from Cloud Whale the gains, profits, and advantages Cloud Whale has obtained as a result of its wrongful acts. PolyAI is presently unable to ascertain the full extent of the gains, profits, and advantages that Cloud Whale has realized by reason of its wrongful acts.

176. PolyAI seeks declaratory and injunctive relief pursuant to Florida Statute § 501.201 et. seq., including recovery of its damages pursuant to §§501.201 et seq., and its attorney's fees and costs

**COUNT VI**
**BREACH OF CONTRACT**

177. PolyAI hereby readopts and re-alleges the allegations set forth in Paragraphs 1 – 113 above.

178. The Agreement is a valid and enforceable contract between PolyAI and Cloud Whale.

179. PolyAI has fully performed all promises, covenants, and conditions required under the Agreement, except those that have been prevented or otherwise excused.

180. Cloud Whale materially breached the Agreement in or around March 2025, September 2025, April 2026 and August 2026, as set forth above.

181. Cloud Whale has materially breached the Agreement at least four times.

182. Cloud Whale's acts of repeatedly materially breaching the Agreement constitute a separate material breach of the Agreement. This breach is not curable.

183. Cloud Whale materially breached the Agreement knowing that its material breaches would cause severe harm to PolyAI.

184. As a direct and proximate result of Cloud Whale's material breaches of the Agreement, PolyAI has suffered damages in an amount to be determined according to proof at trial, with pre- and post-judgment interest at the highest rate permitted by law.

185. Cloud Whale's breaches have caused, and will continue to cause, monetary damage to PolyAI in an amount to be proven at trial in excess of $75,000.00.

186. As a direct and proximate result of Cloud Whale's material breaches of the Agreement, PolyAI is entitled to recover its attorney's fees and costs pursuant to the terms of the Agreement.

## COUNT VII
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

187. PolyAI hereby readopts and re-alleges the allegations set forth in Paragraphs 1 – 113 above.

188. The Agreement is a valid and enforceable contract between Plaintiff and Defendant.

189. Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. This implied covenant of good faith and fair dealing requires that no party do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement. The covenant implies that in all contracts, each party will do things reasonably contemplated by the terms of the contract to accomplish its purpose. The covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

190. PolyAI has fully performed all promises, covenants, and conditions required under the Agreement, except those that have been prevented or otherwise excused.

191. Cloud Whale materially breached the Agreement in or around March 2025, September 2025, April 2026 and August 2026, as set forth above.

192. Cloud Whale has not cured, and does not intend to cure, the material breach PolyAI brought to Cloud Whale's attention on August 4, 2026.

193. Cloud Whale has materially breached the Agreement at least four separate times.

194. Cloud Whale's acts of repeatedly materially breaching the Agreement constitute a separate material breach of the Agreement. This breach is not curable.

195. Cloud Whale materially breached the Agreement knowing that its material breaches would cause severe harm to PolyAI.

196. As a direct and proximate result of Cloud Whale's material breaches of the Agreement, PolyAI has suffered damages in an amount to be determined according to proof at trial, with pre- and post-judgment interest at the highest rate permitted by law.

197. Cloud Whale's breaches have caused, and will continue to cause, monetary damage to PolyAI in an amount to be proven at trial in excess of $75,000.00.

198. As a direct and proximate result of Cloud Whale's material breaches of the Agreement, PolyAI is entitled to recover its attorney's fees and costs pursuant to the terms of the Agreement.

## PRAYER FOR RELIEF

WHEREFORE, PolyAI prays that this Court enter a judgment in favor of PolyAI on each and every claim for relief set forth above and award its relief including, but not limited to the following:

A. That Cloud Whale and its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting in concern or

privity with Cloud Whale, be permanently enjoined from: (1) using the mark or term POLYAI, or any similar variation thereof (including POLY.AI, POLY AI and POLYS.AI), (2) using any trademark or term that imitates or is confusingly similar to the mark POLYAI, or any similar variation thereof (including POLY.AI, POLY AI and POLYS.AI), or is likely to cause confusion, mistake, deception, or public misunderstanding as to the origins of PolyAI's goods/services or their relatedness to Cloud Whale; and (3) engaging in trademark infringement, unfair competition, false designation of origin, or other activities that misappropriate PolyAI's trademark rights and/or breach the Agreement.

B. That Cloud Whale and its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting in concern or privity with Cloud Whale, be ordered to comply with the terms of the Agreement, and to remove and de-index all uses of the term "Poly AI" and similar terms (including in the soft 404s (HTTP 200) pages and meta tags), all of which is subject to an audit for compliance.

C. Cloud Whale be ordered to deliver up for destruction all devices, containers, labels, signs, packaging, advertising, promotional material or the like in possession, custody or control of Cloud Whale bearing the trademark found to infringe on PolyAI's trademark rights, as well as all plates and other means of making same.

D. Cloud Whale be ordered to transfer to PolyAI all of Cloud Whale's rights, title and interest in and to the www.polyai.ai domain name.

E. Cloud Whale be ordered to pay damages, including but not limited to Cloud Whale's profits, and those damages be trebled under 15 U.S.C. § 1117.

F. Cloud Whale be compelled to account to PolyAI for any and all profits derived from its illegal acts complained of herein, including under 15 U.S.C. § 1117.

G. Cloud Whale be ordered to pay PolyAI's costs and attorneys' fees in this action pursuant to 15 U.S.C. § 1117, the terms of the Agreement, and/or other applicable laws.

H. Pre- and post-judgment interest.

I. Awarding such other relief as the Court may deem just and proper.

## JURY DEMAND

PolyAI hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

Dated: October 28, 2026

/s/ Ryan S. Hilbert

Ryan S. Hilbert (Florida Bar No. 1048644)
James R. Menker (Florida Bar No. 19306)
E-mail: jmenker@holleymenker.com
rhilbert@holleymenker.com
HOLLEY & MENKER, P.A.
60 Ocean Boulevard, Suite 3
Atlantic Beach, Florida 32233
Telephone: 904.247.2620
Facsimile: 202.280.1177

*Attorneys for POLYAI LTD*